UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 12-33527 EEB |
| North American Dealer Co-Op | ) | |
| EIN: 13-4203891 | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |

**MOTION TO APPROVE SETTLEMENT AGREEMENT WITH
WESTERN INSURANCE COMPANY IN LIQUIDATION**

David Wadsworth, Esq., the Chapter 7 Trustee in the captioned case, by and through his attorneys, Kutner Brinen Garber, P.C., for his Motion to Approve Settlement Agreement with Western Insurance Company in Liquidation respectfully states as follows:

**BACKGROUND**

1. North American Dealer Co-Op ("Debtor" or "NADC") filed for protection under Chapter 7 of the Bankruptcy Code on November 15, 2012 ("Petition Date").

2. David Wadsworth ("Trustee") is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate.

3. The following summary of background facts is based upon information reviewed by the Trustee and provided by the Debtor, the Receiver in the Western Insurance Company liquidation, and pleadings filed in the receivership, the within bankruptcy case, the bankruptcy case of North American Dealer Services and the bankruptcy case of Access Insurance Services, Inc.:

   (a) Prior to seeking bankruptcy protection, NADC operated as a cooperative association consisting of automobile dealers throughout the United States. NADC offered its member dealers an automobile reimbursement program ("AWR"). Under the AWR, member dealers offered customers interested in buying an extended vehicle service contract a "money back guarantee" which provided that if the customer did not use the extended service contract prior to the date of its expiration, the customer would, assuming compliance with other terms and conditions, receive a refund of the purchase price for their extended service contract up to a certain limit.

   (b) In connection with the AWR, NADC member dealers set aside a "reserve" for each contract. The reserve was intended to pay all future reimbursement claims made against the member dealer. Access Insurance Services, Inc. ("Access"), in its

capacity as managing general agent for Western Insurance Company ("Western"), administered and controlled the reserves of behalf of NADC and its member dealers. The reserves were purportedly held in a "collateral reserve account" which account was a trust account held by Access and Western in a fiduciary capacity for NADC and the member dealers.

(c) To protect against the possibility that the member dealers' own reserves held in the collateral reserve account would be insufficient to pay all claims that may be made against outstanding money back guarantees, NADC member dealers were purportedly protected by a surety bond issued by Western (the "Western Bond") which bond was intended to pay all valid outstanding reimbursement claims in the event that the collateral reserve account became depleted. The Western Bond was issued in 2004.

(d) Beginning in May 2011, Western started failing to pay approved claims out of the collateral reserve account.

(e) On September 1, 2011, Access filed a chapter 11 Voluntary Petition for relief in Nevada.

(f) On September 13, 2011, Western was placed into a liquidating receivership in Utah.

4. In February 2012, NADC timely filed the following three claims in the Western receivership:

> Claim #400941: $30,600,000 representing "a percentage of potential outstanding claims from customers of NADC's member dealers that could make claims for refunds under the customers' Vehicle Service Contract Reimbursement Guarantees ("VSCRG") in the future.
>
> Claim #400942: $3,683,757.23 representing currently authorized claims described as follows: "This claim represents all of the currently authorized and approved claims from customers of NADC's member dealers that have made claims for refunds under the customers' VSCRB's from June 30, 2011 through February 20, 2012. . . The total of the claim referenced above will increase as additional claims are approved. . . Amount guaranteed under Surety Bond $3,683,757.23. . . NADC is the principal named under the Surety Bond which Surety Bond was put in place to cover the claims referenced above in the event that the collateral reserve funds on deposit with Western, that are the subject of a separate proof of claim, were insufficient to cover the above-referenced claims."
>
> Claim #400943: $8,476,368 representing the "collateral reserve fund" described as follows: "Since April 1, 2004, NADC on behalf of its member dealers has transferred to Western the sum of $17,776,368 as collateral reserve funds to be held in trust by Western in order to cover money back guarantees under a Surety Bond that was issued by Western to NADC as principal. . . The collateral reserve fund in the amount of $8,476,368 is the Security for this claim. . . To date, Western has paid out $9,300,000 from the collateral reserve funds to satisfy the

obligations of NADC's members to reimburse claims for VSCRG's approved by NADC and submitted to Western for payment. Thus, the balance of the collateral reserve fund is $8,476,368."

5. On January 27, 2014, the Receiver issued his Notice of Determination, denying all three claims. The grounds for denial are detailed below.

6. The Received denied Claim #400941 on the grounds that it is not mature.

7. The Receiver denied Claim #400942 on grounds that "the claims represented in this proof of claim are claims for reimbursement to customers who are not covered by the bond." Next, the Receiver asserted "there is no evidence that the collateral reserve fund was insufficient to cover the claims . . ."

8. The Receiver denied Claim #400943 on the grounds that NADC was improperly acting as an insurer, insurance agent, and/or broker as an illegal insurance operation. Next, the Receiver asserted NADC's claim should be denied because it is in the form of reinsurance.

9. The Trustee had 45 days, or until March 13, 2014, to provide to the Receiver a response to the denial of the claims.

10. The Trustee's response (the "Response") to each claim objection is summarized as follows:

> a. With respect to Claim Number 400941, Utah Code Ann. § 31A-27a-603(4)(a), governing the liquidation of insurance companies, provides that a "claim that is not mature as of the coverage termination date established under Section 31A-27a-402 may be allowed as if it were mature, except the claim shall be discounted to present value." In accordance with Utah Code Ann. § 31A-27a-402, the fact that Claim #400941 represents a claim that has not yet matured does not mean the claim should be denied, but rather that the claim should be reduced to its present value.
>
> There is also historical data which supports the calculation in Claim #400941. As explained in Claim #400941, at the time the Claim was filed there were 180,000 potential claims from NADC customers under the AWR. As explained in Claim #400941, on average, ten percent of customers make a claim for a refund. Based upon the fact that at the time Claim #400941 was filed there were 18,000 NADC customer claims likely to be asserted times the refund amount of $1,700 per claim, Claim #400941 is properly asserted at $30,600,000. There is also documentary evidence to support Claim #400941. The Receiver has received many banker boxes full of Proof of Claims filed in the receivership action from NADC's customers which support the amount asserted in Claim #400941. In addition, there was a bar date of April 21, 2014 set in the NADC Chapter 7 case which represents the last day for parties in interest, including NADC customers, to assert claims against the NADC bankruptcy estates. These claims provide further support for Claim #400941.

  b. The amount asserted in Claim #400942 is supported by the claims filed by NADC customers with the Receiver as well as the Proof of Claims filed in NADC's bankruptcy case. In addition, attached to NADC's claim filed with the Receiver is a list of approved NADC customer claims. These documents provide sufficient basis for allowance of Claim #400942.

  c. With respect to Claim #400943, NADC was selling the AWR, which is a money back or refund program. NADC was not selling any type of insurance. The AWR is not a risk shifting product. Accordingly, the AWR does not fall within the definition of insurance as set forth in Utah Code Ann. § 31A-1-301(86).

11. After the filing of the Trustee's Response, substantial negotiation occurred between undersigned counsel for the Trustee and counsel for the Receiver, including debate over the import of the facts of this case and the application of law to the facts.

12. Among the key issues of dispute were whether the Trustee had sufficient documentary evidence to support the claims, whether NADC was improperly selling an insurance product without properly being authorized by the state, whether Western was providing reinsurance (which would have placed the claims in a lower priority class that likely will not receive a distribution), whether any proceeds being held by the Receiver were from the AWR and therefore property of NADC, and the impact of the stay benefiting the Receiver and whether this estate could demand an accounting.

13. Specifically, with respect to Claim Number 400941, the Receiver takes the position, among other things, that the claim has to be for a sum certain, like a contract claim, whereas Claim Number 400941 is a projection or estimate. Under the Receiver's read of the receivership statute, which is a viable interpretation, since the claim is not for a sum certain it must be denied as speculative.

14. With respect to Claim Numbers 400942 and 400943, the Receiver argues, among other things, that the State of Washington has ruled the AWR is an illegal insurance product and he would make the same argument before the Utah court. He further argues that under the applicable insurance and receivership statutes, the product being provided by Western satisfied the definition of reinsurance.

15. The Receiver has made it clear to the Trustee that he is prepared to litigate these issues. If the Receiver prevails on any these arguments, the claims may be placed, under the receivership statute, in a class that will not receive a distribution.

16. The Trustee is also faced with the fact that the estate is insolvent and, except for the claims asserted in the Western receivership, has no assets to liquidate and thereby fund protracted, risky and uncertain litigation in Utah.

17. Further the Utah insurance receiver statute is complex, vague, and provides the Receiver with substantial discretion and advantage, including that the Trustee is limited at a hearing to the documents attached to the claim filed in the receivership (which claims were not prepared by the Trustee but rather by NADC) unless the Receiver allows otherwise.

18. Based upon all of the foregoing considerations, the Trustee has determined that it is in the best interest of the estate to settle this matter in accordance with the terms reflected in the Settlement Agreement, a copy which is attached hereto as Exhibit A.

19. As set forth in the Settlement Agreement, an Amended Notice of Determination has been filed in the receivership, which Amended Notice provides that the NADC estate will have a class 3 allowed claim in the receivership in the amount of $100,000, and the remainder of the claims will remain denied.

## RELIEF REQUESTED

20. The Trustee seeks approval of the Settlement Agreement pursuant to 11 U.S.C. § 105 and Fed.R.Bankr.P. 9019. The law generally favors compromises and settlements of disputes between parties. *See Stanpec Corp. v. Jelco, Inc.*, 464 F.2d 1184 (10th Cir. 1972).

21. Pursuant to Fed.R.Bankr.P. 9019, after a hearing on notice to creditors, the bankruptcy court may approve a compromise or settlement. "The standards by which to evaluate a settlement proposal have been defined by the courts." *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 105 B.R. 971, 976 (D.Colo.1989). "In general, the court must determine whether the settlement is fair and equitable and in the best interests of the estate." *Id.* The factors to consider in this determination are (1) the probability of success on the merits in the litigation; (2) the difficulties, if any, to be encountered in collection of any judgment that might be obtained; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interests of creditors and the proper deference to their reasonable views in the premises. *Id.* at 976-77.

22. The Trustee believes that the Settlement Agreement is reasonable and in the best interest of the estate under the *Kaiser Steel* test. The terms of the Settlement Agreement were negotiated with knowledge of the strengths and weaknesses of the parties' respective positions as follows:

   a. *Probability of Success on the Merits*: Given the uncertainty of the outcome of further litigation, the Trustee has determined that such uncertainty is sufficient to outweigh the possible benefits to the Debtor's bankruptcy estate of continuing to litigate the claims. The Trustee has no money to fund litigation, which would occur in the Utah state courts placing the Trustee at a serious disadvantage. Further, the Utah insurance receivership statute is drafted heavily in favor of the Receiver, providing substantial benefit to the Receiver including burdens of proof,

procedural matters, and presumptions with respect to factual findings. In short, the burden of proving the case is placed on the Trustee, who is stuck with the claims filed by NADC, which claims may not provide sufficient documentary evidence to establish the validity of the claims. Further, the Trustee may have difficulty locating and obtaining the cooperation of certain fact witnesses, particularly the purchasers of the AWR. Lastly, should the Trustee not prevail on trial, the claims would be relegated to a priority class that will not be receiving a distribution.

b. *Difficulties in Collection*: The Trustee does not believe that there would be any difficulty in collecting on a judgment obtained against the Receiver, though the amount of the distribution should the claim(s) be allowed is uncertain. There will be no distribution on account of the claims if the Trustee does not prevail in the litigation and the claims are relegated to a class below Class 3.

c. *The Expense, Inconvenience, and Delay of Litigation*: The expense and inconvenience of a trial in Utah when the estate has no resources favors approval of the settlement agreement. Litigation of the claims would occur when the Receiver requested a trial. The Trustee also has no resources to employ local counsel in Utah.

d. *The Interest of Creditors*: The bankruptcy estate will mostly likely realize a benefit if the Settlement Agreement is approved by way of a distribution to creditors. Given the issues related to the probability of success of litigation, the Settlement Agreement is in the best interest of the creditors.

23. In sum, the settlement avoids the cost, expense and uncertainty of litigation. The settlement will most likely provide a distribution to creditors of this estate. Based upon discussion with counsel for the Receiver, the percentage distribution for Class 3 cannot yet be determined though it appears there will be sufficient funds in the receivership to make a distribution to Class 3.

WHEREFORE, the Trustee, David Wadsworth, respectfully requests that this Court enter an order, a proposed form of Order is filed herewith, approving the Settlement Agreement, and for such further and additional relief as to his Court appears proper.

Dated: June 12, 2014.

Respectfully submitted,

By: /s/ Aaron A. Garber

Aaron A. Garber #36099
**KUTNER BRINEN GARBER, P.C.**
303 East 17th Avenue, Suite 500
Denver, CO 80203
Telephone: (303) 832-2400
Telecopy: (303) 832-1510
Email: aag@kutnerlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 12, 2014, I served by prepaid first class mail a copy of the foregoing **MOTION TO APPROVE SETTLEMENT AGREEMENT WITH WESTERN INSURANCE COMPANY IN LIQUIDATION AND NOTICE OF MOTION TO APPROVE SETTLEMENT AGREEMENT WITH WESTERN INSURANCE COMPANY IN LIQUIDATION** on all parties against whom relief is sought and those otherwise entitled to service pursuant to the FED. R. BANKR. P. and these L.B.R. at the following addresses:

Robert Kert Hunt, Esq.
825 East Speer Blvd.
Suite 100A
Denver, CO 80218-3724

Donald D. Allen, Esq.
1700 Lincoln Street
Suite 4550
Denver, CO 80203

Gerald H. Suniville, Esq.
VanCott Bagley Cornwall & McCarthy
36 South State Street
Suite 1900
Salt Lake City, UT 84111-1478

United States Trustee
999 18th Street
Suite 1551
Denver, CO 80202

Visa Automotive, Inc.
800 Wilshire Boulevard
12th Floor
Los Angeles, CA 90017

David V. Wadsworth, Esq.
Chapter 7 Trustee
1660 Lincoln Street
Suite 2200
Denver, CO 80264

*Vicky Martina*

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into this 12th day of June, 2014, by and between Lennard W. Stillman, Special Deputy Liquidator ("Liquidator") of Western Insurance Company in Liquidation ("WIC") presently pending in the Third Judicial District Court of Salt Lake County, State of Utah, Case No. 110917050, and David V. Wadsworth, the duly appointed, qualified and acting Chapter 7 Trustee ("Trustee") of North American Dealer Co-Op ("NADC"), a debtor in Chapter 7 proceedings pending in the United States Bankruptcy Court for the District of Colorado, Case No. 12-33527-EEB.

## RECITALS

### WIC Liquidation

1. On September 13, 2011, the Third Judicial District Court of Salt Lake County, State of Utah, entered its Liquidation Order, Declaration of Insolvency and Restraining Orders with respect to the liquidation of WIC. This Order, among other things, established March 9, 2012, as the deadline for filing claims.

2. On January 19, 2012, the Liquidation court entered its Order Granting the Motion of the Special Deputy Liquidator to Disallow Claims That Have Been or May Be Filed by Customers of North American Dealer Co-Op. This Order established that the WIC estate had no direct obligation or liability to the individual purchasers of NADC's Vehicle Service Contract Reimbursement Guaranties.

### NADC Liquidation

3. On November 15, 2012, NADC filed its voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado, Case No. 12-33527-EEB. David Wadsworth was appointed trustee of NADC.

### NADC Proofs of Claim Liquidation

4. In February 2012, NADC filed three claims in the WIC liquidation proceeding, described by the Trustee as follows:

> Claim #400941: $30,600,000 representing "a percentage of potential outstanding claims from customers of NADC's member dealers that could make claims for refunds under the customers' Vehicle Service Contract Reimbursement Guarantees ("VSCRG") in the future.

**Exhibit A**

<u>Claim #400942</u>: $3,683,757.23 representing currently authorized claims described as follows: "This claim represents all of the currently authorized and approved claims from customers of NADC's member dealers that have made claims for refunds under the customers' VSCRB's from June 30, 2011 through February 20, 2012.

<u>Claim #400943</u>: $8,476,368 representing the "collateral reserve fund" described as follows: "Since April 1, 2004, NADC on behalf of its member dealers has transferred to Western the sum of $17,776,368 as collateral reserve funds to be held in trust by Western in order to cover money back guarantees under a Surety Bond that was issued by Western to NADC as principal... The collateral reserve fund in the amount of $8,476,368 is the Security for this claim... To date, Western has paid out $9,300,000 from the collateral reserve funds to satisfy the obligations of NADC's members to reimburse claims for VSCRG's approved by NADC and submitted to Western for payment. Thus, the balance of the collateral reserve fund is $8,476,368."

5. After first obtaining relief from the automatic stay in the NADC Chapter 7 case, the Liquidator denied each of NADC's claims, pursuant to the Notice of Determination dated January 27, 2014, a copy of which is annexed hereto, marked as Exhibit "A" and incorporated herein by this reference.

6. The Trustee timely filed his response to the Liquidator's Notice of Determination, a copy of which is annexed hereto, marked as Exhibit "B" and incorporated herein by this reference.

### Negotiations

7. The Parties have entered into arms' length and good-faith negotiations to avoid the costs, expenses and uncertainty of litigation and collection, and the Parties have agreed to resolve and compromise the claims and disputes which may exist between them, whether known or unknown, pursuant to the terms and conditions more fully set forth below.

### AGREEMENT

NOW THEREFORE, in consideration of the mutual promises, covenants and agreements set forth in this Agreement, and based upon the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

A. NADC shall be entitled to Class 3 claim in the WIC Liquidation in the sum of $100,000.00. The balance of the claims shall be denied in full, as more particularly

2

set forth in the proposed amended Notice of Determination, a copy of which is annexed hereto, marked Exhibit "C" and incorporated herein by this reference.

B. **Representations and Warranties**. The Liquidator and Trustee represent and warrant that (a) they have full power and authority to enter into this Agreement, and (b) there has been no assignment or other transfer of a claim, cause of action or other liability which might affect or impair the terms set forth in this Agreement.

C. **Attorneys' Fees and Costs**. The Liquidator and Trustee agree that they will bear their own respective attorneys' fees and costs incurred in connection with entering into and implementing this Agreement.

D. **Effectuation of Agreement**. The Parties agree to perform any other or further acts, and execute and deliver any other or further documents, as may be necessary or appropriate to implement this Agreement.

E. **Binding Effect**. This Agreement shall be binding upon each of the Parties and their respective successors-in-interest, heirs and/or assigns, executors, affiliates, administrators, personal representatives, estates and to all persons or entities claiming by, through or under them. All representations and warranties made herein shall survive execution of this Agreement and shall at all times subsequent to the execution of this Agreement remain binding and fully enforceable.

F. **Governing Law**. This Agreement is made pursuant to, and shall be governed by, the laws of the State of Utah.

G. **Construction of Agreement**. This Agreement shall be construed as a whole in accordance with its fair meaning and in accordance with governing law. This Agreement has been negotiated by each of the Parties (or their respective counsel), and the language of the Agreement shall not be construed for or against any particular Party.

H. **Voluntary Agreement**. This Agreement has been carefully read by the Parties and has been reviewed by the Parties' respective legal counsel (or, if not represented, such Parties had the opportunity to engage counsel to review the Agreement); the contents hereof are known and understood by the Parties; and each of the Parties acknowledges that such Party is under no duress or undue influence and that each of the Parties executes this Agreement as its own free and voluntary act.

I. **Integration and Amendments**. This Agreement shall constitute the entire agreement and understanding of and between the Parties in relation to matters described herein, and no statements, representations, inducements or promises other than as expressly set forth herein have been given or received by any of the Parties

3

(nor by their respective agents, employees, attorneys or representatives) in return for the same. All negotiations, oral conversations, statements, representations and/or agreements leading up to the execution of this Agreement are merged herewith and shall not be the basis for any legal rights, claims or defenses in relation to any litigation or otherwise. No parole or extrinsic evidence may be used to contradict any of the terms of this Agreement. Any amendment to this Agreement must be in writing, signed by duly authorized representatives of the Parties hereto, and specifically state the intent of the Parties to amend this Agreement.

J.  **Severability.** To the extent that any portion of this Agreement is held unenforceable by a court, tribunal or arbiter of competent jurisdiction, the remainder of this Agreement shall remain binding and enforceable, provided that the primary purposes of the Agreement are not frustrated.

K.  **Counterparts.** This Agreement may be executed by the Parties hereto in any number of identical counterparts, each of which, once executed and delivered in accordance with the terms of this Agreement, will be deemed an original, with all such counterparts taken together constituting one and the same instrument. Delivery by facsimile, encrypted e-mail or e-mail file attachment of any such executed counterpart to this Agreement will be deemed the equivalent of the delivery of the original executed agreement or instrument.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date and year first above written.

LIQUIDATOR

By: Lennard W. Stillman
Special Deputy Liquidator of
Western Insurance Company

TRUSTEE

By: David Wadsworth
Chapter 7 Trustee of North American
Dealer Co-Op

4815-1386-2427, v. 1

4